UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

| | |
|---|---|
| DAVID REEVES, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 1:15cv102 PLC SNLJ |
| | ) |
| CAROLYN W. COLVIN, Acting | ) |
| Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

## REPORT AND RECOMMENDATION

David Reeves seeks judicial review, under 42 U.S.C. §§ 405(g) and 1383(c)(3), of the final decision of Carolyn Colvin, the Acting Commissioner of Social Security ("Commissioner"), denying Plaintiff's applications for Social Security Income and disability insurance benefits. This matter was referred to the undersigned for review and a recommended disposition pursuant to 28 U.S.C. § 636(b). The undersigned recommends that the Commissioner's decision be affirmed.

### I.  *Background and Procedural History*

In July 2012, Plaintiff filed applications for Supplemental Security Income and disability insurance benefits claiming that he became disabled on June 15, 2011. (Tr. 125-29, 132-35). The Social Security Administration ("SSA") denied Plaintiff's claim, and he filed a timely request for a hearing before an administrative law judge. (Tr. 79-83, 86). The SSA granted Plaintiff's request for review and conducted a hearing on October 21, 2013. (Tr. 26-58). In a decision dated December 17, 2013, the ALJ found that Plaintiff had "not been under a disability within the meaning of the Social Security Act from June 15, 2011 through the date of this decision." (Tr. 12-20). The SSA Appeals Council denied Plaintiff's subsequent request for

review of the ALJ's decision. (Tr. 1-4). Plaintiff has exhausted all administrative remedies, and the ALJ's decision stands as the Commissioner's final decision. See 20 C.F.R. § 404.981.

## II.  *Evidence Before the ALJ*

### A. Hearing testimony

Plaintiff, who was represented by counsel, appeared at the administrative hearing in December 2013. (Tr. 26). The Plaintiff testified that he was born in 1965, had a high school diploma, and was last employed in June 2013. (Tr. 31, 33). Plaintiff explained that he most recently worked in the aircraft upholstery department of Sabre Liner Corporation, where he regularly carried 25 to 75 pounds. (Tr. 33). Plaintiff left that job because his "back was hurting pretty bad and I was just starting to have a lot of trouble with my knees." (Tr. 34). Prior to working for Sabre Liner Corporation, Plaintiff performed "odds and ends work," drove a "medical bus," worked as an auto body technician, operated a tire-shredding machine, and painted aircraft. (Tr. 34-35).

Plaintiff stated that his "main problem" was lower back pain caused by two deteriorated discs, bone spurs, and arthritis. (Tr. 36). Plaintiff's "other main problem" was pain in his knees. (Tr. 37). Plaintiff testified that his back "just constantly stays sore" and "the pain level varies . . . . from one to about six" on a ten-point scale. (Tr. 39-40). Plaintiff took ibuprofen and naproxen sodium for pain, and Xanax for anxiety, restless legs, and difficulty sleeping. (Tr. 40). Plaintiff had not undergone surgery on his back because, when he last had "decent insurance," Dr. Avasarala informed him "I did not qualify for surgery, that it wasn't bad enough yet." (Tr. 41).

Plaintiff testified that his activities of daily living included: watching television and reading; walking his dog three or four times per day for ten to fifteen minutes; light yard work, such as mowing his lawn in shifts on a riding motor; tinkering in his shop; visiting friends in

town; and talking on the phone to friends and family. (Tr. 42-43, 48). Plaintiff stated that he could not sit or stand for longer than fifteen minutes, and he needed to change positions frequently because, when he sits too long, "the aching numb in my lower back, it just drives me crazy. And if I get up, it relieves that pain." (Tr. 43-44, 47). When Plaintiff's attorney asked whether he could do a "desk job," Plaintiff answered: "I need to be able to move around and do things for my – my body. . . . [R]egardless of my lack of training. I just – I would have to get up and move around. And obviously you're not doing work if you're up from your desk." (Tr. 49-50).

Janice Hastert, a vocational expert, also testified at the hearing. (Tr. 51- 54). The ALJ asked Ms. Hastert to consider a hypothetical claimant able to perform a range of light work, including: lifting up to 20 pounds occasionally; lifting or carrying ten pounds frequently, standing or walking for six hours and sitting for up to six hours per eight hour day; occasionally stooping, kneeling, crawling, and climbing; and tolerating occasional exposure to workplace hazards such as moving mechanical parts and unprotected heights. (Tr. 52). Ms. Hastert affirmed that such an individual would not be able to perform Plaintiff's past "medium" work, but testified that "[t]here's a wide range of unskilled light occupations that fall within that criteria," and she opined that such a person could perform work as a sales attendant, mail clerk, or electrical sub-assembler. (Tr. 52-53). In response to a second hypothetical question, Ms. Hastert testified that an individual able to do a range of sedentary, unskilled work could obtain employment as a document preparer, lens inserter, and ampule sealer. (Tr. 53-54). When the ALJ asked whether a person in either of the first two hypothetical questions required "an option of sitting or standing at 15 minute intervals," Ms. Hastert answered, "That would preclude competitive employment." (Tr. 54). Finally, Ms. Hastert testified that if the hypothetical

3

individual were absent two or more times per month, "[t]hat would eliminate competitive employment." (Id.).

B. *Relevant Medical Records*

On February 24, 2011, Plaintiff sought treatment for lower back pain from Dr. Jagannadha Avasarala at Cape Neurology Specialists. (Tr. 243-44). Plaintiff characterized his pain as "severe and aching" and "essentially constant," and "he note[d] some pain relief with back extension." (Tr. 243). Plaintiff also reported stiffness in both knees, and Dr. Avasarala observed that Plaintiff was "affected by a left leg limp" but "able to heel, toe and tandem walk without difficulty." (Tr. 243-44). Dr. Avasarala ordered an MRI, which revealed the following: "small L4-L5 central disc protrusions do not cause significant central spinal canal stenosis"; "[m]inimal bilateral L3-L4 foraminal stenosis"; and "[m]ild multilevel facet hypertrophy." (Tr. 239). Plaintiff also underwent an electromyogram and nerve conduction study, which showed "no electrodiagnostic evidence for a left lumbrosacral radiculopathy." (Tr. 256).

When Plaintiff followed up with Dr. Avasalara on March 14, 2011, Dr. Avasalara prescribed Valium and tramadol. (Tr. 260). Dr. Avasalara also referred Plaintiff to physical therapy and a pain management specialist. (Id.). After six physical therapy sessions, Plaintiff's therapist reported: "Patient reports today that his pain is much better; down to a 2-3/10; significant decrease in tightness . . . ." (Tr. 247). At an appointment with Dr. Avasalara on April 18, 2011, Plaintiff informed the doctor that "his back pain improved considerably since visiting with Rehab." (Tr. 240). Dr. Avasalara prescribed Xanax, tramadol, and three more weeks of physical therapy. (Tr. 241).

Plaintiff saw Dr. Benjamin Soeter at the Missouri Southern Healthcare Pain Clinic on May 10, 2011. (Tr. 266). Plaintiff reported "sharp, occasionally dull, constant pain.

Occasionally intermittent. Made worse with leaning forward, standing, sitting, and twisting." (Id.). Plaintiff informed Dr. Soeter that the Xanax, tramadol, and valium decreased his pain "from 8/10 to 1 to 2/10." (Id.). Dr. Soeter observed that Plaintiff was "[t]ender to palpation paraspinal lumbar and thoracic musculature and gross paraspinal low back." (Tr. 267).

On January 12, 2012, Plaintiff presented to the Poplar Bluff Regional Medical Center with "swelling knees," lower back pain, and worsening restless leg syndrome. (Tr. 327). On January 23, 2012, Plaintiff saw Dr. Su Min Ko at the Advanced Pain Center. (Tr. 289). Plaintiff informed Dr. Ko that his "usual pain level is 5 (scale of 1 – 10)" and his "[f]unctional impairment is moderate – when present it interferes only with some daily activities." (Tr. 289). Dr. Ko prescribed Plaintiff oxycodone-acetaminophen and tizanidine, and he ordered images of Plaintiff's knees. (Tr. 291-93). On January 24, 2012, a doctor at Poplar Bluff Regional Medical Center noted that Plaintiff suffered bilateral knee edema. (Tr. 328). X-rays administered on January 25, 2012 revealed "[n]o evidence of osseous injury or destructive process." (Tr. 321).

Plaintiff followed up with Dr. Ko on February 6, 2012. (Tr. 284-88). Plaintiff advised Dr. Ko that his pain "is mild to moderate but sometimes severe" and that the "[p]ain meds are helping and improving daily functioning and sleep and pain is tolerable." (Tr. 284). Dr. Ko prescribed morphine sulfate and tizandine, and he scheduled a lumbar epidural steroid injection. (Tr. 287-88). Dr. Ko administered the injection on February 15, 2012. (Tr. 280-84).

When Plaintiff saw Dr. Ko on March 19, 2012, his "chief complaint" was bilateral knee pain. (Tr. 299-303). Plaintiff informed Dr. Ko that the epidural steroid injection helped for one week, decreasing his symptoms by 80%, and his current pain level was two. (Tr. 298, 303). Dr. Ko ordered x-rays of Plaintiffs' knees, which revealed "[n]o evidence of joint effusion," "no localized severe joint space narrowing," and "minimal incongruity between the femoral condyles

5

and adjacent tibial plateau of the left knee." (Tr. 319). Dr. Abdul Naushad examined Plaintiff at the Advanced Pain Center on March 26, 2012, and Plaintiff rated his pain as a three on a ten-point scale.[1] (Tr. 294-98). On April 16, 2012, Plaintiff sought relief for back pain at the Poplar Bluff Regional Medical Center. (Tr. 332).

On January 9, 2013, Plaintiff presented to his general practitioner Dr. John Hunt at the Poplar Bluff Regional Medical Center seeking treatment and medication for back pain. (Tr. 336). Plaintiff returned to Dr. Hunt's office on February 11, 2013, reporting upper back pain and muscle spasms after performing yard work the previous day. (Tr. 337). On August 15, 2013, Plaintiff informed Dr. Hunt that his chronic back pain continued and the bilateral knee pain was worsening. (Tr. 339). On November 11, 2013, Plaintiff saw Dr. Hunt because he had injured his eye while welding. (Tr. 342).

In September 2012, Dr. James Morgan completed a Psychiatric Review Technique ("PRT") and Residual Functional Capacity Assessment at the request of the SSA. (Tr. 59-76). In the PRT, Dr. Morgan diagnosed Plaintiff with "anxiety-related disorders," which he found mildly affected Plaintiff's activities of daily living, social functioning, and ability to maintain concentration, persistence, or pace. (Tr. 62). Dr. Morgan explained: "[C]laimant has been diagnosed with GAD and prescribed Xanax by his PCP. He has not sought treatment specifically from a psychiatrist or required hospitalization due to anxiety or any other mental impairment. During numerous physical exams, there is no mention of obvious mental limitations. . . . ." (Id.). Dr. Morgan found that Plaintiff was "partially credible" in that the "[e]vidence in file does not fully support claimant's allegations." (Tr. 63).

---

[1] Although Dr. Nashaud noted that Plaintiff was scheduled for a second lumbar epidural steroid injection, a review of the record revealed no evidence that Plaintiff received the second injection.

In assessing Plaintiff's residual functional capacity ("RFC"), Dr. Morgan found that Plaintiff had exertional limitations, but maintained the ability to: occasionally lift and/or carry twenty pounds; frequently lift and/or carry ten pounds; stand and/or walk for a total of six hours in an eight-hour work day; sit for a total of six hours in an eight-hour work day; and occasionally stoop, kneel, crawl, and climb ramps, stairs, ladders, ropes, and scaffolds. (Tr. 63-64). According to Dr. Morgan, Plaintiff's ability to balance and crouch was unlimited. (Tr. 64-65). Dr. Morgan recommended that Plaintiff "avoid concentrated exposure to heights/hazards due to DJD of the b/l knees and DDD of the L spine." (Tr. 65). Based on his findings, Dr. Morgan determined that Plaintiff was "not disabled." (Tr. 67).

Dr. Douglas Chang analyzed Plaintiff's records on March 18, 2013 at the request of the SSA. (Tr. 334). Dr. Chang wrote:

> Bilateral x-rays of knees are essentially normal. LS spine MRI shows small central disc protrusions at L4-5 and L5/S1. Also minimal bilateral foraminal stenosis at L3-4 and mild multilevel facet hypertrophy noted. Neurologist notes that the claimant was dismissed from his office to be followed in the future with pain specialist. Pain specialist has given various analgesics including Percocet. Claimant continues to have pain of back and knees. The imaging tests do not show impairments that would cause the level of pain alleged. Primary MDI is considered to be pain syndrome.

(Id.) In regard to Plaintiff's credibility, Dr. Chang stated: "Alleges ability to lift only light objects. Able to walk around the house a few minutes. MDI do not support this severe level of limitation. Given partial credibility." (Id.).

A physician completed a Medical Report Including Physician's Certification/Disability Evaluation for Plaintiff on June 17, 2014.[2] (Tr.5-6). The doctor diagnosed Plaintiff with "back pain/lumbar disc disease" and knee pain, and he found that Plaintiff had a "physical disability

---

[2] The physician's printed name and signature on the form are illegible.

7

which prevents him/her from engaging in that employment or gainful activity for which his/her age, training, experience or education will fit him/her." (Tr. 6). The doctor noted that "the expected duration of disability/incapacity will be . . . 13 or more months." (Id.).

### III. *Standards for Determining Disability Under the Act*

Eligibility for disability benefits under the Act requires a claimant to demonstrate that he or she suffers from a physical or mental disability. 42 U.S.C. § 423(a)(1). The Act defines disability as "the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period not less than 12 months." 20 C.F.R. §§ 404.1505(a), 416.905(a). The impairment must be "of such severity that [the claimant] is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ." 42 U.S.C. § 1382c(a)(3)(B).

To determine whether a claimant is disabled, the Commissioner engages in a five-step evaluation process. See 20 C.F.R. §§ 404.1520, 416.920. Those steps require a claimant to show that he or she: (1) is not engaged in substantial gainful activity; (2) has a severe impairment or combination of impairments which significantly limits his or her physical or mental ability to do basic work activities or (3) has an impairment which meets or exceeds one of the impairments listed in 20 C.F.R., Subpart P, Appendix 1; (4) is unable to return to his or her past relevant work; and (5) the impairments prevent him or her from doing any other work. Id.

### IV. *The ALJ's Determination*

The ALJ applied the five-step evaluation process set forth in 20 C.F.R. §§ 404.1520 and 416.920, and he found that Plaintiff: had not engaged in substantial gainful activity since June

8

15, 2011; had the severe impairment of "degenerative disc disease of the lumbar spine"; and did not have an impairment or combination of impairments that meets or medically equals the severity of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 12-20). The ALJ explained that Plaintiff's "disorder of the lumbar spine did not meet the requirements of Listing 1.04 because he did not have evidence of nerve root compression, spinal arachnoiditis or lumbar spinal stenosis resulting in pseudoclaudication." (Tr. 16).

The ALJ determined that Plaintiff had the RFC to perform light work:

> in that he can lift and carry 20 pounds occasionally and 10 pounds frequently. He can sit for up to 6 hours in an 8-hour workday and he can stand or walk for approximately 6 hours in an 8-hour workday. He can occasionally climb ramps, stairs, ladders, ropes, or scaffolds. He can occasionally stoop, kneel, and crawl. He is able to tolerate occasional exposure to workplace hazards such as unprotected moving mechanical parts and unprotected heights.

(Id.). The ALJ noted that Plaintiff alleged: constant back pain varying between one and six on a scale of one to ten; difficulty sleeping, lifting more than a small briefcase, and walking more than 200 or 300 feet at once; and a need to change positions between sitting, walking, and standing every fifteen minutes. (Tr. 16-17). Although the ALJ found that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms," he believed Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible . . . ." (Tr.17).

The ALJ proceeded to review Plaintiff's medical records and determined that the following facts were inconsistent with Plaintiff's claim of disabling low back pain: objective medical testing revealed no serious problems; the clinical signs and findings were "minimal"; Plaintiff took only naproxen and ibuprofen; Plaintiff reported significant improvement from the physical therapy he received in 2011; Plaintiff had not "undergone chiropractic manipulation or

9

use of a TENS unit"; Plaintiff's primary care provider "noted low back tenderness without spasm or positive straight leg raise testing"; Plaintiff's degenerative disc disease was insufficiently severe to warrant surgery; and claimant's doctor "did not report musculoskeletal findings between January 2012 and November 2013." (Id.). In regard to Plaintiff's treatment history, the ALJ acknowledged that Plaintiff lost access to Medicaid after his wife returned to work, but noted that Plaintiff: did not seek "low cost or no cost treatment alternatives," never presented to the emergency room for immediate relief of his symptoms, and received only one Toradol shot. (Id.). The ALJ further found that Plaintiff's activities of daily living and statements to his various doctors regarding the severity of his pain were inconsistent with his allegations of total physical disability. (Tr. 18).

Despite finding Plaintiff not fully credible, the ALJ determined that Plaintiff's impairments required a reduction of his RFC and therefore found that Plaintiff "is capable of performing less than the full range of light work . . . ." (Id.). In formulating Plaintiff's RFC, the ALJ "assign[ed] great weight" to Dr. Chang's medical opinion because "it is consistent with the minimal objective evidence, the essentially normal clinical signs and findings, and the claimant's ability to perform light yard work, drive, shop weekly, and attend church twice a week." (Id.). Finally, the ALJ determined that Plaintiff was unable to perform past relevant work, but he could perform unskilled light work as a mail clerk or electrical sub-assembler. (Tr. 19-20).

## V. Standard for Judicial Review

The court must affirm the ALJ's decision if it is supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence 'is less than a preponderance, but enough so that a reasonable mind might find it adequate to support the conclusion.'" Cruze v. Chater, 85 F.3d 1320, 1323 (8th Cir. 1996) (quotation omitted). In determining whether the evidence is

substantial, the court considers evidence that both supports and detracts from the Commissioner's decision. Pate-Fires v. Astrue, 564 F.3d 935, 942 (8th Cir. 2009). However, the court "do[es] not reweigh the evidence presented to the ALJ and [it] defer[s] to the ALJ's determinations regarding the credibility of testimony, as long as those determinations are supported by good reason and substantial evidence." Renstrue v. Astrue, 680 F.3d 1057, 1064 (8th Cir. 2012) (quoting Gonzales v. Barnhart, 465 F.3d 890, 894 (8th Cir. 2006)).

"If, after reviewing the record, the court finds it is possible to draw two inconsistent positions from the evidence and one of those positions represents the ALJ's findings, the court must affirm the ALJ's decision." Partee v. Astrue, 638 F.3d 860, 863 (8th Cir. 2011) (quoting Goff v. Barnhart, 421 F.3d 785, 789 (8th Cir. 2005)). The Eighth Circuit has repeatedly held that a court should "defer heavily to the findings and conclusions" of the Social Security Administration. Hurd v. Astrue, 621 F.3d 734, 738 (8th Cir. 2010); Howard v. Massanari, 255 F.3d 577, 581 (8th Cir. 2001).

## VI. *Discussion*

Plaintiff claims the ALJ erred in finding he had the RFC to perform light work. More specifically, Plaintiff contends that: (1) the ALJ improperly discredited his subjective complaints; and (2) the ALJ's determination that Plaintiff was able to perform unskilled sedentary work was not supported by substantial evidence of record. In response, the Commissioner asserts that the ALJ's RFC finding was supported by substantial evidence.

*1. Credibility*

Before determining a claimant's RFC, the ALJ must evaluate the credibility of the claimant's subjective complaints. Wagner v. Astrue, 499 F.3d 842, 851 (8th Cir. 2007) (citing Pearsall v. Massanari, 274 F.3d 1211, 1218 (8th Cir. 2001)). Although an ALJ "may not

discount a claimant's allegations of disabling pain solely because the objective medical evidence does not fully support them[,] . . .the ALJ may disbelieve subjective complaints if there are inconsistencies in the evidence as a whole." Goff, 421 F.3d at 792 (internal citations and quotations omitted). "We defer to the ALJ's evaluation of [a claimant's] credibility, provided that such determination is supported by good reasons and substantial evidence, even if every factor is not discussed in depth." Smith v. Colvin, 756 F.3d 621, 625 (8th Cir. 2014) (internal quotations and citations omitted).

Here, the ALJ found that Plaintiff's "allegations of disabling low back pain are not fully credible." (Tr. 18). The ALJ acknowledged that Plaintiff testified to "constant back pain" and that Plaintiff sought treatment for pain, including medication, physical therapy, and a lumbar epidural steroid injection. (Tr. 17). However, the ALJ found that Plaintiff's statements concerning the intensity, persistence, and limiting effects of his symptoms "are not entirely credible." (Id.). The ALJ wove his credibility analysis into the RFC determination, highlighting the inconsistencies in the record. (Tr. 16-20).

First, the ALJ cited the results of objective medical testing, as well as the clinical signs and findings, as grounds for discrediting Plaintiff's subjective allegations. (Tr. 17). A lack of objective medical findings to support the degree of subjective complaints is an important factor in evaluating a claimant's credibility. Russell v. Sullivan, 950 F.2d 542, 545 (8th Cir. 1991). The ALJ noted that the Plaintiff's MRI of March 2011 showed only "small L4-L5 and L5-S1 central disc protrusion without significant central spinal canal stenosis, minimal bilateral L3-L4 foraminal stenosis and only mild multi-level hypertrophy" and "[a]n electromyogram of [Plaintiff's] lower extremities was also normal" (Tr. 17). In addition, the ALJ found that the clinical signs and findings are . . . minimal" and "are inconsistent with disabling low back pain."

12

(Id.). In 2011, Plaintiff's physical therapist reported that Plaintiff "had no curve to the lumbar spine, but he retained a good posture" and his primary care provider "noted low back tenderness without spasm or positive straight leg raise testing." (Id.). In 2012, Plaintiff "generally exhibited only mild to moderate tenderness in the lower spine without muscle spasm" and his pain management provider "noted positive Waddell's signs in both axial and vertical loading."

Second, the ALJ found that Plaintiff's "conservative treatment history" discredited his subjective claims regarding the intensity, persistence, and limiting effects of his impairment. (Id.). The ALJ noted that Plaintiff: "takes only Naproxen or Ibuprofen," "has not undergone chiropractic manipulation or use of a TENS unit," "has not presented to the emergency room for immediate relief of his symptoms," and "presented to his primary care provider for a Toradol shot on one occasion." (Id.). A record of conservative treatment is a proper consideration when discrediting a claimant's subjective complaints of pain. See Gowell v. Apfel, 242 F.3d 793, 796 (8th Cir. 2001).

Third, the ALJ found that Plaintiff's statements to his treating physicians undermined his claim of total physical disability. For example, Plaintiff reported "significant improvement" in his back after he underwent physical therapy in early 2011. (Id.). He also "reported 80 percent relief" from a lumbar epidural steroid injection and stated that, according to his last provider, "his degenerative disc disease was not severe enough to warrant surgery." (Id.). In 2012, Plaintiff reported "his pain was generally mild to moderate and only occasionally severe," "his pain only interferes with some activities of daily living," and "his pain generally averaged between zero and four on a scale of 0 to 10." (Tr. 18). See Medhaug v. Astrue, 578 F.3d 805, 817 (8th Cir. 2009) (impairment is not disabling if it can be controlled through treatment or medication).

13

Finally, the ALJ found that Plaintiff's daily activities suggested his pain was less limiting than he alleged. Plaintiff testified that he "retained the ability to cook simple meals, perform personal care, drive short distances, shop weekly, attend church twice a week, and perform small household repairs." (Id.). Plaintiff also testified that he watched television, read, walked his dogs up to three times per day, performed light yard work "including mowing the lawn in shifts on a riding tractor," tinkered in his shop; and "recently reported welding." (Id.). "Acts which are inconsistent with a claimant's assertion of disability reflect negatively upon that claimant's credibility." Johnson v. Apfel, 240 F.3d 1145, 1158 (8th Cir. 2001).

The court finds that the ALJ considered Plaintiff's subjective complaints on the basis of the entire record and set out a number of inconsistencies that detracted from his credibility. Because the ALJ's determination not to credit Plaintiff's subjective complaints is supported by "good reasons and substantial evidence," the court defers to his determination. See Gonzales, 465 F.3d at 894.

*2. RFC*

In addition to challenging the ALJ's credibility determination, Plaintiff claims that the ALJ erred in finding that he had the RFC to perform light work. A claimant's RFC is "the most [a claimant] can still do despite" his or her physical or mental limitations. 20 C.F.R. § 404.1545(a). "The ALJ should determine a claimant's RFC based on all relevant evidence including the medical records, observations of treating physicians and others, and an individual's own description of his limitations." Moore v. Astrue, 572 F.3d 520, 523 (8th Cir. 2009) (quoting Lacroix v. Barnhart, 465 F.3d 881, 887 (8th Cir. 2006)). The claimant bears the burden of proving disability and demonstrating his or her RFC. Martise v. Astrue, 641 F.3d 909, 923 (8th Cir. 2011).

In this case, the ALJ concluded that Plaintiff had the RFC to perform light work, except that he could occasionally climb, stoop, kneel, and crawl and occasionally tolerate exposure to workplace hazards such as moving mechanical parts and unprotected heights. (Tr. 16). The ALJ's findings coincide with Dr. Chang's medical opinion, to which the ALJ "assign[ed] great weight." (Tr. 18). The ALJ explained that Dr. Chang's medical opinion "is consistent with the minimal objective evidence, the essentially normal clinical signs and findings, and the claimant's ability to perform light yard work, drive, shop weekly, and attend church twice a week." (Tr. 18).

When the opinion of a non-examining physician is consistent with the medical and non-medical evidence in the record, it is proper to afford that opinion considerable weight. See 20 C.F.R. §§ 404.1527(c)(1)-(2), 416.927(c)(1)-(2). Based on a review of the record, this court concludes that Dr. Chang's opinion was consistent with the evidence as a whole. As previously discussed, neither the results of Plaintiff's medical testing nor the observations and findings of his physicians suggested that he suffered a debilitating impairment. By Plaintiff's own admission, his pain varied between zero and six, he visited his general practitioner for treatment of his back "probably every two to three months," and his pain only interfered with some activities of daily living.

Moreover, the ALJ accommodated Plaintiff's back and knee pain by limiting him to light work and only occasional climbing, stooping, kneeling, and crawling. The court finds that the medical evidence does not support limitations more severe than those articulated in the RFC. "The mere fact that working may cause pain or discomfort does not mandate a finding of disability[.]" Craig v. Apfel, 212 F.3d 433, 436 (8th Cir. 2000).

Because the ALJ's RFC determination is consistent with the type and level of treatment Plaintiff sought and received, his physicians' medical observations, and the results of medical testing, substantial evidence in the record supports the ALJ's RFC finding. "If substantial evidence supports the Commissioner's conclusions, this court does not reverse even if it would reach a different conclusion, or merely because substantial evidence also supports the contrary outcome." Travis v. Astrue, 477 F.3d 1037, 1040 (8th Cir. 2007).

## VII. *Conclusion*

For the reasons discussed above, the undersigned finds that substantial evidence in the record as a whole supports the Commissioner's decision that Plaintiff is not disabled. Accordingly,

**IT IS HEREBY RECOMMENDED** that the final decision of the Commissioner denying Social Security benefits be **AFFIRMED.**

The parties are advised that they have 14 days to file written objections to this Report and Recommendation. The failure to file timely written objections may waive the right to appeal issues of fact.

PATRICIA L. COHEN
UNITED STATES MAGISTRATE JUDGE

Dated this 18th day of May, 2016